PYLANT *v.* BRADEN.

Opinion delivered December 8, 1924.

VENDOR AND PURCHASER—RESCISSION FOR FRAUD—LACHES.—The right of a purchaser to rescind a contract for fraud is barred by laches where he waited more than two years after discovery of the fraud and until the vendor had commenced a suit for the balance of the purchase money.

Appeal from Craighead Chancery Court, Eastern District; *J. M. Futrell,* Chancellor; affirmed.

### STATEMENT OF FACTS.

R. L. Braden and W. A. Stewart brought this suit in equity against G. L. Pylant and Minnie Pylant, his wife, to recover judgment in the sum of $333.33, the balance of the purchase price of a town lot in Monette, Ark., and to foreclose their vendor's lien on said lot.

The defense was that the contract sought to be enforced had been procured by false representations, and the defendants sought to rescind the contract and to obtain a cancellation of the notes described in the complaint.

It appears from the record that G. L. Pylant purchased the lot in question at an auction sale held by R. L. Braden and W. A. Stewart. He paid one-third of the purchase price in cash and executed two notes for $166.60 each for the balance of the purchase money. The notes were dated January 27, 1920, and due respectively on or before the 1st day of October, 1920, and 1921. Pylant bought the lot for the purpose of establishing a home on it, and relied upon the representations of R. L. Braden that a park of twenty acres in front of the lot had been dedicated to the public, and that a hard road would be constructed in front of the lot. Pylant did not discover that the park was not to be dedicated to the public until the following summer after purchasing the lot. He then offered to surrender his deed to the property and to

lose what he had paid on it and to give Braden a mule if he would rescind the contract. Pylant was asked why he had done this, and testified that hard times had come and that he had promised to pay more than the lot was worth, which was especially true since there was to be no park or hard road or paved street in front of it.

Other testimony was introduced by the defendants to corroborate the testimony of Pylant.

R. L. Braden was the principal witness for the plaintiffs. He admitted that a park was shown on the plat containing the lot in question. He stated that he had agreed to sell the park to certain citizens of the town of Monette, and that the sale was abandoned because they failed to pay him for the park. He stated that he was still willing to sell the land for the park at the agreed price. He denied making any other announcement about the park than it was to be a public park if the sale was carried out, and also stated that the street in front of the lot in question would be paved. The street was a part of a road in an existing improvement district which was subsequently abandoned. Braden admitted that, later on, Pylant came to him and told him that he was not able to pay the balance of the purchase price of the lot. He offered to return the deed and give Braden a mule if he would rescind the contract. Braden told Pylant that he did not have any use for the mule, and refused to rescind the contract. Pylant gave as a reason for wishing to rescind the contract that property had greatly depreciated in value on account of the panic in 1920, and that he was not able to pay for it.

The chancellor rendered a decree in favor of the plaintiffs, and ordered the property to be sold in default of the payment of the balance of the purchase price within the time mentioned in the decree. To reverse that decree, the defendants have prosecuted this appeal.

Appellant *pro se.*

It is admitted by all the persons testifying that the existence of the park was of material inducement, that

it enhanced the value of adjacent lots, and that appellant had this in mind when he purchased. When a bid is obtained by the suppression of a material fact, the seller cannot enforce the purchase, and the buyer is entitled to recover the amount of the deposit made in conformity with the terms of the sale. 59 N. Y. 462. If the vendor makes a false statement of fact material to a sale, either with knowledge of its falsity, or in ignorance of its falsity, when, from his special means of information, he ought to have known it, and thereby induces the vendee to purchase to his damage, he is liable therefor in an action at law, or the purchaser may in equity have the same rescinded. 112 Ark. 502; 71 Ark. 91. See also 43 Ark. 449; 4 Johns, 1; 200 N. Y. 268; 93 N. E. 235; 34 L. R. A. (N. S.) 927, note. To support an action for false representations, it is not necessary that the representations be addressed directly to the plaintiff, if made with intent to induce all to whom it may be communicated, nor is it essential that such representation be the sole inducement. 43 Ark. 454-462; 112 Ark. 501. If appellant was partially influenced by other representations, still, if he mainly and substantially relied on the fraudulent representation that there was an actual park, and that "this street is the main street to the park," he is entitled to cancellation or his damages. 30 Ark. 363, 373-4 Appellees, having a written contract on their part to convey, and on the part of substantial business men to pay for the park site, cannot justify the publishing of the existence of the park as a fact, by saying that they rescinded that contract. Equity ought not to deny appellant relief under such circumstances. 87 Ark. 510-11; 36 Ark. 326; 76 Va. 404-408.

*J. F. Johnson* and *O. H. Hurst,* for appellee.

One who desires to rescind a contract for the purchase of land on the ground of fraud must act promptly after receiving information thereof. (Ark.) 219 S. W. 33. Moreover, to justify rescinding and canceling a contract for the sale of land on the ground of misrepresen-

tation, the evidence thereof must not only be clear, but it must be of a decided and reliable character, relating to some matter of inducement calculated to mislead the purchaser and induce him to buy on the faith thereof, in the absence of means of information to be derived from his own inspection, and to his injury.   71 Ark. 91; 82 Ark. 20.   The means of information are accessible alike to both, and the purchaser will be presumed to have acted upon his own judgment and to have acted with ordinary prudence and diligence, and, if he failed therein, he must abide by the consequences.   46 Ark. 337; 47 Ark. 148.

HART, J., (after stating the facts).   If it be conceded that the representations made by Braden as to the park and the hard road should be considered as sufficient to entitle Pylant to have the contract for the purchase of the lot rescinded, and that the preponderance of the evidence establishes the falsity of the representations, still Pylant is not entitled to rescind the contract, because he did not promptly avail himself of this right as soon as it was discovered.   He could not wait to experiment and see whether the transaction might not, after all, turn out well.   Pylant purchased the property at the auction sale on the 27th day of January, 1920.   He admitted that he found out that the park was abandoned, and that the street was not to be paved, during the latter part of the summer of 1920.   He continued to hold the property until the present suit was commenced on the 14th day of December, 1922.   Indeed, he did not file his answer setting up this defense until January 15, 1923.   During all of this time he was silent and continued to treat the property as his own.   Under the circumstances he will be held to have waived the objection, and will be conclusively bound by the contract as if the alleged fraud had not occurred.   He cannot play fast and loose with regard to the matter.   *Fitzhugh* v. *Davis,* 46 Ark. 337, and *Fleming* v. *Harris,* 142 Ark. 553.

It is true that Pylant offered to rescind the contract and to give Braden a mule if he would permit him to do

so. Braden refused this offer, however, and at no time did Pylant rescind the contract on the ground that it had been procured by the false representations of Braden with regard to the park and hard road.

It follows that the decree must be affirmed.